## HENDRIX v. SEABORN.

1. A testator directed by will that his property (all personalty) should be sold, and the proceeds applied to the payment of his debts. *Held*, that this bequest was not such an alienation in the sense of the statute as would defeat the widow's claim to an exemption under the homestead law.

2. The modes provided by the homestead law of defeating a claim of homestead (alienation and mortgage) cannot be extended by implication.

3. A person may defeat his own right to homestead and that of his family after him by an alienation during his life-time; but a bequest cannot defeat it, because the bequest does not take effect until the right to homestead has become vested in the widow who survives him.

4. It is the policy of the law to favor a homestead exemption, especially to a widow and children, against the creditors of the debtor.

Before PRESSLEY, J., Oconee, January, 1885.

The opinion states the case.

*Messrs. Wells, Orr, Thompson & Jaynes*, for appellant, cited *inter alia*, 100 *Mass.*, 234; 34 *N. H.*, 392; *Smythe Homest.*, § 364; *Thomp. Homest.*, § 544; 6 *Cal.*, 72; 7 *Id.*, 342; 12 *Id.*, 327; 33 *Id.*, 326; 30 *Wisc.*, 306; 14 *Iowa*, 567; 10 *Mich.*, 291; 1 *Nev.*, 568; 3 *Minn.*, 53; 6 *Bush.*, 448; 13 *Texas*, 71; 5 *Kans.*, 597; 25 *Ill.*, 221; 45 *Miss.*, 409; 37 *Texas*, 269; *Harp.*, 91; 17 *S. C.*, 551.

*Messrs. Murray & Shelor*, contra.

November 22, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Elias Hendrix died in November, 1884, possessed of a small personal estate and owing comparatively a considerable amount of debts. He left a widow and child as his family, and a will by which he provided as follows, viz., that all his property should be sold and the proceeds applied, first, to the payment of his debts; second, a bequest of $200.00 to Lula Owens, a young girl whom he had raised; and third, the residue, if any, to go to his widow, Matilda Hendrix. James Seaborn, the defendant, was named as executor, and he qualified as such.

The widow, Matilda, applied to the master, Richard Lewis, Esq., claiming the homestead exemption of $500, notwithstanding the will of her deceased husband, and the master, after taking testimony, made an order assigning her the constitutional exemption in the property of her deceased husband. The defendant, executor, excepted to the homestead set off by the commissioners under his order and appealed to the Circuit Court. The exceptions were heard by Judge Pressley, who reversed the order of the master allowing the plaintiff homestead in the personal property of her deceased husband, contrary to the provisions of his will, and set aside the same. From this order the plaintiff appeals to this court upon the following exceptions:

"I. Because his honor erred in his conclusion of law that the testamentary disposition of property by a debtor would defeat his widow's right to homestead exemption in his property against his creditors.

"II. Because his honor erred in refusing to confirm the order of Richard Lewis, master, assigning exemption in the personalty of Elias Hendrix, deceased, to his widow, Matilda.

"III. Because his honor erred in directing the executor to wind up the estate of his testator according to the provisions of his will, when the estate is insolvent and his widow entitled to homestead exemption against his debts.

"IV. Because the creditors of the testator do not become legatees under his will, and the estate being insolvent, the homestead exemption defeats the payment of the debts, and his honor should have so held.

"V. Because the husband, under the law, has no right to direct by a testamentary disposition after his death that his widow cannot claim homestead exemption against his debts, and it should have been so held by his honor.

"VI. Because the right of homestead secured by the constitution and the acts in pursuance thereof, is not an estate, but a mere exemption; hence the only effect of an assignment of homestead is to ascertain and designate what particular property is covered by such exemption, so that the same cannot be applied to the payment of debts, and thus the homestead laws do not affect the statute of distribution, nor the right of the owner to dispose of the same as he may see fit.

"VII. Because the title to property is not changed by its being designated as a homestead for the family of one deceased, but such property remains subject to the payment of debts, the application to their payment to be made at the time of the death of the person entitled to such exemption, and said property also remains subject to the provisions of a will after the constitutional exemption has been enjoyed.

"VIII. Because the assignment of homestead in this case could have no other effect than to designate and set apart certain property of testator as exempt from his debts during the life of the widow, leaving the title to such property just where it was before, and leaving the property so designated as exempt, subject to the payment of his debts and to distribution at the death of Matilda Hendrix, according to the provisions of the will of testator; and his honor should have so held," &c

The legacy to Lula Owens being a voluntary gift, cannot stand in the way of creditors, and therefore the only question in the case is, whether the widow is entitled to the exemption of $500, as against the debts of the testator, to which he directed it to be paid by his will.

The constitution as amended in 1880 declares: "That the general assembly shall enact such laws as will exempt from attachment and sale, under any mesne or final process issued from any court, to the head of any family residing in this State, a homestead in lands, whether held in fee or any lesser estate; * * * and every head of a family residing in this State, whether enti-

tled to a homestead exemption in lands or not, personal property not to exceed in value the sum of five hundred dollars," &c. In order to carry this provision into effect, the general assembly has passed laws directing as to the manner in which the debtor may claim his homestead exemption, and have the same set off to him, and in addition has made the following provision : "If the husband be dead, the wife or children; if the father and mother be dead, the children living on the homestead, &c., shall be entitled to have the family homestead exempted in like manner as if the husband or parents were living," &c. "No waiver of the right of homestead, however solemn, made by the head of the family, at any time prior to the assignment of homestead, shall defeat the homestead provided for by this chapter: provided, however, that no right of homestead shall exist or be allowed in any property, real or personal, aliened or mortgaged, by any person or persons whomsoever, as against the title or claim of the alienee or mortgagee, or his, her, or their heirs or assigns." *Gen. Stat.*, §§ 1997, 1998.

There is no doubt that the testator, Hendrix, in his life-time might have claimed the exemption; but not having done so, and had it actually assigned, he, as owner, had the right to alien or mortgage it so as to exclude his widow from claiming it after his death. See *Homestead Association* v. *Enslow*, 7 *S. C.*, 19; *Smith* v. *Mallone*, 10 *Id.*, 40, and subsequent cases. He did not, however, while living, execute a mortgage of his property to secure his creditors, but he left a will, by which he directed that his property should be sold and the proceeds applied to the payment of his debts; and the question is, whether that testamentary disposition was such an "alienation" of his property in the sense of the act as to exclude the widow's right to the exemption after his death. The question is one of construction as to the intent of the legislature.

It is true that, speaking in general terms, a disposition by will may be embraced in the word "alienation," used in a generic sense, as being one of the many ways in which it may be effected. But it seems to us that the accurate and specific meaning of the word is to pass an estate from one to another, involving the idea of a perfected conveyance of title *inter vivos.* Alienation has been de-

fined to be "the act by which the title to an estate is voluntarily resigned by one person and accepted by another in the forms prescribed by law." 2 *Bouv. L. Dict.* In conformity with this definition, our court has held that a mortgage not passing the title, but being a mere security for the debt, is not an alienation under the statute, 3 and 4 W. & M., chap. 14, General Statutes, section 1952. · See *Simons* v. *Bryce,* 10 *S. C.,* 354; *Smith* v. *Grant,* 15 *Id.,* 150; *Warren* v. *Raymond,* 17 *Id.,* 178.

The provisions of the homestead law, in the circumstances authorizing the exemption, are general in their character, specifying the cases in which the exemption is excluded, viz., alienation and mortgage by the debtor. These are clearly exceptions to a general rule, and therefore are not to be extended or enlarged by implication. It is to be assumed that, if other exceptions, such as a legacy or devise, had been intended, they would have been added to the list. The point raised here has never before arisen in this State, but the great industry and research of the appellant's counsel have enabled him to cite numerous cases from the reports of other States to the point that no instrument, conveyance, encumbrance, lien, or charge, can affect the right to claim homestead, except such as are expressly mentioned in the enactment, constitutional or statutory, creating the exemption. It seems that in homestead cases, especially as to the causes of exclusion, there is a strict application of the maxim, *expressio unius est exclusio alterius.* See *Pott. Dwarris,* 321, where it is said: "An exception strengthens the force of law in cases not excepted; so, according to Lord Bacon, enumeration weakens it in cases not enumerated."

But in addition to this, while the husband is undoubtedly the absolute owner of his property, so far as concerns the right of alienation, it is manifest that in regard to homestead the provisions of the law above cited, taken together, limit that right and create something like an interest for life in the husband, with limitation over to the wife and children; that is to say, the husband has the right to claim the exemption during his life; but if he does not avail himself of that right, it is at his death transmitted to his wife and children. Looking at it in this light, the difficulty does not lie in the fact that a testamentary provision cannot be

carried into effect until after the death of the testator; for as to mortgages, it often happens that they are not foreclosed, and may not even fall due until after the death of the mortgagor. But as to its being an alienation, the great trouble lies further back, and has reference to the time when the testamentary provision really comes into existence; whether a charge by will, which is ambulatory and does not take effect until after the death of the testator, can be said to be "an alienation" in the life-time of the testator. The will may have been prepared and executed long before, but it was inchoate, and gave no rights whatever, until the death of the testator, which was the precise moment at which the husband's right of homestead ceased to exist and was transmitted to his wife and children. Under these circumstances, can it be said that the charge in favor of the creditors came into existence in the life-time of the testator, or did it not in fact become effectual after the husband's right for life had terminated, being an attempt to reach beyond and control the matter after his death? And if so, which right should be preferred, that of creditors or the homestead right of the widow?

It seems to us, in respect to this right of homestead exemption, the husband debtor is in a condition somewhat analogous to that of the first taker in a fee conditional after issue born. He has the right in his life-time to alien by deed, but it is well settled that a devise by him is not an alienation within the meaning of the law. "If such an alienation do not take effect in the life-time of the testator, the estate must descend to the heirs of limitation *per formam doni.*" *Jones* v. *Postell and Potter, Harper*, 92. In delivering the judgment of the court in this case, Chancellor Johnson said: "Alienation may be effected by devise; and when this question was first presented to my mind, its strong inclination was, that as one of the means it was embraced in the power given to the tenant of a conditional fee to alien on the birth of issue; but I am satisfied, on a more attentive consideration, that its meaning was intended to be restricted to alienation by deed. It will be recollected, that if the devisee had died without having been divested of the estate by some of the means authorized by law, it would have descended to the heirs of his body, and the devise would have taken effect *per formam doni.*

It is also clear that the devise could not take effect until after the death of the testator, so that the rights of the issue and the devisee devolved on them both at the same instant, and the question is, which of them is to be preferred?  *  *  It is impossible to mistake the application of the principle, if we compare this estate with one held in joint tenancy, to which it has been made to apply.   These estates, though different in the manner of their creation and duration and some of their properties, with respect to the powers which the tenants have over them, are strikingly analogous.   A joint tenant, like a tenant of a conditional fee, may alien, forfeit, &c. (*Co. Lit.*, 180 *a*), and by this means defeat the *jus accrescendi;* and yet Littleton says, that if one joint tenant, by testament, devise lands held in joint tenancy, the devise is void; and the reason given is, that 'no devise can take effect till after the death of the devisor, and all the lands presently cometh by the law to his companion who surviveth,' " &c.   See *Burnett* v. *Burnett*, 17 *S. C.*, 552.

We see no reason why the same principle should not apply here.   No bequest can take effect until after the death of the testator, and all the personal property to the extent of the homestead exemption "presently cometh by the law to the widow of testator who surviveth."   Mr. Thompson, in his work on "Homesteads and Exemptions," section 544, says: "The right thus secured to the widow and orphan children of the owner of a homestead, would in some cases be rendered nugatory, if he could deprive them of it by testamentary provision.   The existence of such a right in them is clearly incompatible with the existence of such a power over it by him.   And in this respect it seems to make no difference whether the widow takes a plenary title by descent, as in Vermont, or by survivorship, as in California, or whether she takes a mere right of occupancy during the continuance of certain contingencies, as in most of the States," &c.   See also *Smythe Homest. Exemp.*, § 541; *Brettun* v. *Fox*, 100 *Mass.*, 234; 10 *Ill.*, 263.

We agree with the counsel for the respondent, that it is creditable in a debtor to make provision for the payment of his debts, and that no unnecessary impediments should be thrown in the way of such good purpose.   But it is the duty of the court sim-

ply to administer the law as they understand it. And, as it seems to us, the very existence of the homestead laws shows that in a proper case it is the policy of the law to favor the right of homestead exemption, especially that of the widow and children, against the creditors of the deceased husband.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded for such further proceedings as may be necessary to carry out the conclusions herein announced.